[Civ. No. 9013. Third Dist. Nov. 1, 1957.]

EARL WALKER et al., Appellants, v. STATE OF CALI-FORNIA ex rel. State Board of Equalization et al., Respondents.

Philip C. Wilkins and Huber & Goodwin for Appellants.

Edmund G. Brown, Attorney General, James E. Sabine and Irving H. Perluss, Assistant Attorneys General, and Edward P. Hollingshead, Deputy Attorney General, for Respondents.

PEEK, J.—Plaintiffs appeal from an adverse judgment in an action instituted by them to recover motor vehicle transportation license taxes assessed against them by the defendant Board of Equalization and paid by plaintiffs under protest.

The facts show that Mutual Plywood Corporation, which we will refer to as "Mutual," agreed to purchase from Emmerson and Berg Lumber Company certain standing timber. Shortly thereafter Mutual entered into a logging contract with Joe Walker, now deceased, who was one of the plaintiffs herein. The purpose of the logging contract was stated to be ". . . for delivery of the logs resulting from said logging operation to Mutual or its order." The contract further provided that "for his services . . . Walker shall be paid . . . seventy-eight per cent (78%) of the fair market value of each grade of logs produced, at the time of delivery to Mutual, or for its account." The contract also provided that Walker would finance and conduct the entire logging operation, provide for all logging equipment and pay wages and other expenses incident to the logging operations including the construction of roads, a storage pond and facilities for handling, selecting and loading. In the event Mutual requested Walker to keep logs in storage for its benefit, it agreed to pay therefor a stated price per thousand, and for deliveries outside the designated delivery zone, Walker was entitled to receive additional compensation. Paragraph 14 of the contract specifically provided: "Nothing herein contained shall be deemed to vest in Walker or to convey to Walker any right, title, claim or interest in or to the logs or timber or timberlands which are the subject to this agreement, it being the intent that as between the parties hereto ownership of and title to all such logs and timber and timberlands shall at all times be and remain in Mutual." Paragraph 16(c) provided that at Mutual's option, Walker was to indemnify and insure it against fire and also to indemnify and insure it against loss or damage to logs in transit. Paragraph 17 provided that all taxes imposed upon the logs, timber and timber lands which were the subject of the agreement, as well as any cutting and severage taxes, were to be paid by Mutual. The contract further declared that Walker was an independent contractor in the conduct of his operations.

Pursuant to the contract, plaintiffs delivered to Mutual all "peeler logs" for its own use in manufacturing plywood.

These logs are of the highest grade and constituted approximately 20 per cent of the harvest. In accordance with a subsequent oral agreement between the parties, Walker was permitted to and did sell on behalf of Mutual all "saw logs" which constituted approximately 80 per cent of the production and which could not be used by Mutual in its plywood manufacturing business. Mutual billed the purchasers of the logs so sold by plaintiffs, and after receipt of payment, in turn paid plaintiffs.

At the conclusion of the hearing the trial court found that pursuant to the written contract and oral modification thereof, plaintiffs, as operators, transported logs for compensation over the highways of this state; and that plaintiffs were not the owners of the logs so transported. At most, said the court, they were mere bailees thereof, having an agency or power of sale with regard to the logs harvested and sold, and entered judgment sustaining the determination.

It would appear that in the trial court and in their opening brief it was plaintiffs' contention that they were equitable owners of the timber, at least to the extent of 78 per cent, by virtue of their contract with Mutual. In plaintiffs' reply brief, as in their complaint, they take the further position that since no specific charge was made for transportation, they were not operators for hire or compensation as provided in the applicable code section.

Under the provisions of section 9651 of the Revenue and Taxation Code, a tax of 3 per cent of the gross receipts is imposed upon operators from their operations of vehicles in the transportation of property over the highways of the state. Section 9603 defines an operator as "any person engaging in the transportation of persons or property for hire or compensation by or upon a motor vehicle upon any public highway in this State, either directly or indirectly." However, this section specifically excludes "any person transporting his own property in a motor vehicle owned or operated by him unless he makes a specific charge for the transportation."

In their endeavor to bring themselves within the exemption set forth in section 9603, and thereby avoid the imposition of the tax, plaintiffs contend first that they were the owners, if not as to all of the timber transported, at least as to a portion thereof; and second that they were not operators for hire, citing *Hughson Condensed Milk Co.* v. *State Board of Equalization*, 23 Cal.App.2d 281 [73 P.2d 290]. Whether

they term themselves equitable owners or conditional vendees is of no consequence. In either event the validity of their argument must depend upon ownership of the logs. But in any event they are bound by the terms of their contract with Mutual. As previously noted, that instrument contained the specific provision that "nothing contained herein shall be deemed to vest in Walker . . . any right, title or interest," and that as "between the parties" it was their stated intent that "title . . . shall at all times be and remain in Mutual." Furthermore, that instrument provided that for Walker's "services" he would be "paid" a percentage of the fair market value of the logs.

█ One who would bring himself within a particular tax exemption is confronted with the fundamental rule that the exemption must be strictly construed to the end that it will neither be enlarged nor extended beyond the plain meaning of the language employed. (*Cypress Lawn C. Assn.* v. *San Francisco,* 211 Cal. 387 [295 P. 813].) █ Certainly the meaning of the section in question is plain and unambiguous. Without doubt it can only mean that first the person concerned must be an owner transporting his own property in a vehicle owned by him, and second that he has made no specific charge for the transportation. The very clear and precise language of the agreement negatives either any present interest in the logs by Walker or the acquisition of any title at a later date. Everything contained in the contract is specifically to the contrary. We are entirely in agreement with the trial court's comment that at most the relationship of the parties would appear to be that of bailor and bailee.

█ It is true that plaintiffs did not raise the contention that as no specific charge was made they were not operators until their reply brief was filed. But since they have requested that respondents be given time to argue the point, we have chosen to discuss the same rather than dismiss the contention under the well-established rules on appeal. (See *Newell* v. *Brawner,* 140 Cal.App.2d 523 [295 P.2d 460].)

█ It appears without contradiction that by the terms of the agreement Walker agreed to do certain things, and "for his services" he was to be "paid seventy-eight per cent (78%) of the fair market value of each grade of logs." It is not contended that the parties did not carry out the terms of the contract as agreed. Necessarily, therefore, plaintiffs, who by the terms of the agreement were specifically precluded from "any right, title, claim or interest in or to the logs" trans-

ported the same on the state highway in their vehicles for which ''services . . . [they were] paid seventy-eight per cent (78%) of the fair market value of each grade of logs'' delivered to Mutual. Under such facts and circumstances it cannot be said that plaintiffs were not operators within the meaning of the applicable code section or that the tax assessed was not proper.

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.